We thank her for helping us out. I understand that everyone is here. We'll hear the first case, Fischer v. Forrest. Your Honors, and may it please the Court. My name is Andrew Grimm here on behalf of the Digital Justice Foundation and Plaintiff Appellant James Fischer. I reserve three minutes for rebuttal. I'm going to focus my remarks on the CMI claim, but I'm happy to field any questions you have. The plain text here controls this appeal for the CMI claims. 1202c2 and c3 state that the author of a work and the owner of the copyright in the work, when conveyed in connection with copies of a work, constitutes CMI. The word Fischer's is Mr. Fischer's last name, and it was conveyed in connection with copies of a work. Why isn't that, in essence, just a straight-up infringement claim? Help me understand the CMI component. Well, CMI is an adjunct infringement. Congress was trying to set additional norms with respect to information that would be identifying. They're different because one has mental state requirements, and it's trying to shape norms so that downstream users, be they getting a public distribution of the work or seeing it online, have a way to understand who owns or authored the work, because registration of a copyright is entirely permissive. There's incentives to do it, such as eligibility for statutory damages, and you need to register a work in order to file suit. But there's no need. Your CMI claim is independent of your straight-up copyright claim? That's correct, Judge Shin. And there are arguably problems with your copyright claim because of the statutory damages issue, so you're looking at your CMI claim as an independent claim for damages? Yes, Your Honor, and Congress created the CMI claims as an adjunct to copyright infringement claims with the Digital Millennium Copyright Act. The district court acknowledged that a name can be CMI, so I don't think that that argument works. I mean, its concern was more with the second part in connection with copies or displays of a work. Right, Your Honor. How is that part met here? Well, the district court spoke of four different works at issue. So there was the brochure, description text, and the four phrases, and the single phrase that contained. Why don't you focus on the four phrases? Right. And so the four phrases, the only rationale that the district court provided there was that there was, quote, no CMI significance in the word Fishers. So it made a legal conclusion regarding the name Fishers, and that's what's being appealed here. CMI is supposed to signal that this is a copyright, there is a copyright, and who owns the copyright. Would you agree with that? That's the purpose of CMI? It's supposed to be identifying information if someone's trying to trace the copyright. So there's no Here in the four phrases, how was the name Fisher being used to signal the existence and ownership of a copyright? Was it? And if so, how? Your Honor, so it was being used to signal if someone is reading it for that purpose. So if you compare and contrast the notice of copyright, the statute says a notice of copyright in sections 401 and 402 is supposed to signal the claim of copyright. By contrast, section Phrases, right? I mean, someone should be looking at this, and they see the reference to Fishers Be Quick, and they should be saying, I understand that these four phrases are copyrighted, and the copyright is owned by Fisher. No, Your Honor. Isn't that what a CMI should be doing? No, Your Honor. It's if they are looking for the copyright owner. And the way that you know this is 1202C8. It says a link, an Internet link to identifying information counts as CMI. And so what that means is if there was a link that didn't use any identifying information in the name of the link, the URL, but it went to information that identified the author, the copyright owner, those links to, quote, such information would also constitute CMI. Now, with respect to the phrases, the four phrases that you're focusing on now, the word Fishers is used in just one of those. Is that right? Right. That's correct. So but your argument then is that one would understand with respect to all four phrases that the use of the term Fishers Be Quick is CMI for the four phrases. That's correct, and it was removed. And I would point out that the Third Circuit in Murphy recognized that there's no context requirement. It's an extremely broad definition, and there's no limitation on the context in which the CMI has to be used because Congress was looking to create with the DMCA protection of the integrity of CMI and it would evolve with technologies or however it's used. So there's no, as the intellectual property report by the Blue Ribbon Commission said, there is no standardized format. They're trying to get it so that anyone, any lawyer or any person trying to trace copyright ownership for unregistered work, if they're looking for it, could trace it, do a Google search to figure out who authored this. So protecting informal information and norm-setting was Congress's goal. But on the other hand, what Congress was trying to do beyond the norm-setting is create limiting principles, and they do that through the dual mental state requirements, and they do that through the requirement for an underlying copyright infringement with all the defenses to that, as well as a connection between the removal of CMI and the underlying infringement. If I went on a copyright infringement claim, can I still lose on a CMI claim? Yes, Your Honor, because copyright infringement is strict liability, and a CMI claim requires mental state requirements as well as an underlying infringement. One other point that I think is important is the orphan works problem. The idea is that CMI is helping to trace provenance of works, even if they're not registered, so people can contact rights holders to figure out how to access the work, how to use it, even if it's not registered. Thank you. Thank you. We'll hear from the other side. Good morning, Your Honors. May it please the Court. I'm Daniel Kahn from Kahn & Kahn PC for the appellees. By the way, the Brushy Company is out of business. It's in a receivership? I don't think so. I thought I read somewhere that it was in a receivership. There's no bankruptcy stay or the equivalent thereof, I gather. No. Okay. All right, go ahead. Okay. So I think that appellant, we think the problem with the CMI argument that appellant's making is that they're, and I want to be careful with my language, I'm not saying it's intentional, but I think they're mischaracterizing the lower court's holding. The lower court did not, the order being appealed did not hold that the name Fisher, just the name Fisher standing alone, is not CMI. In fact, they held the opposite. They said, as you pointed out, Judge, that it is capable of constituting CMI. That's consistent with the Court's earlier order where it stated that Fisher's name, although used to describe the product, also serves to identify the author of the work and therefore qualifies as CMI. But it wasn't just Fisher's that was removed. And by the way, I'll get to this as a secondary point in a minute, but it wasn't removed from any of the original works. It was removed from an authorized copy. And that's really the basis of the dismissal of the claim. Fisher's Bequick, that is what was removed, not just Fisher's. And in the context in which Fisher's Bequick was used, the Court made that comparison to Kellogg's Corn Flakes or something like that, where people would understand that to mean the name of the product and not have any CMI significance. But all of that is kind of a side issue because we've explained the difference between just the name of the product and the CMI significance. Well, I think it's almost like a common-sense interpretation. You could take Wrigley's chewing gum. You could take any of these ads that you see on television or in print and take the consumer's commonplace understanding of what is being conveyed, and I think that's the position that the Court was taking, that no consumer could understand Fisher's Bequick as it was used in the allegedly infringing ads to indicate the author or the owner of the copyright. It was just referring to the product. It was just kind of a common-sense argument there. It's the copyright in the four phrases that's at issue. Right? But the four phrases, what we're talking about here. But that's the context, that no one would understand the use of the name Fisher's in the phrase Fisher's Bequick to be DCMI for the four phrases. Correct. That's correct, Judge. And then the other thing is that they didn't remove it from the original work. I mean, the whole case was based on the fact that, and it's alleged in the complaint, that the license, whatever license there was, was revoked on December 10, 2010. And thereafter, the appellees, Brushy, they took the allegedly infringing four phrases and the materials, whatever they took and used in their natural honey harvester ad that they started in 2011, they removed it from their 2010 authorized ad. They had done a number of years of authorized licensed ads, and they removed it from those and then transposed it onto their ad for their own product. By the way, I'm just curious. This product is a spray? You spray it on the beehive? I think it's advertised as a non-foul smelling either a spray or a substance. I think it's a substitute for smoking the bees. I think. I'm not an expert in the industry. Mr. Fisher is, and I understand he invented a product that some people found useful because it did not smell as bad as other products like he says Bego and other things. So, yes, that's my understanding of it. But, again, none of the allegedly infringing materials were removed from the original work, and I think that right there is enough of a basis to dismiss the entire CMI claim. I know that Appellant didn't raise any other issues, but I just want to very briefly respond to a couple of things in the reply brief that I may have overlooked in my brief. But just very quickly, we would say that declaratory judgment is certainly not warranted here because we don't see what the justiciable controversy would be. You can't- Did the district court rule on the claim for a declaratory judgment? I don't think that per se. They just dismissed all the claims. We do have a final judgment, right? Yeah, we have a final judgment, and I think the declaratory judgment, however they referred to it, was also among the claims that were dismissed. And I think the grounds are that there's just no justiciable controversy. You can't come in at the summary judgment stage after three or four years in the case and then change your theory of the case and try to manufacture ambiguity. There was an agreement on the record, apparently, that the defendants wouldn't use this anymore? Yeah, not only that. They actually made an offer of judgment, which isn't in the record, and I realize that's outside the record, but they made a Rule 68 offer of judgment, which, by the way, included an injunction, like a stipulated injunction not to use the phrases. Nonetheless, even though Mr. Fisher rejected or declined to accept that offer, they stopped using the phrases in around 2014, I believe. And now, as we said, the company is not. But there was more than that. It was put on the record. I thought I saw somewhere that maybe it was during an oral argument. It was put on the record that they wouldn't use the four phrases. That's correct, and they didn't after that. So the other issue I wanted to just mention is that there was no wind down. Well, Appellant says in the reply brief that we didn't contest the merits of his argument that the oral license was revoked in April 2011 as opposed to December 10, 2010, which is what he had been saying all along throughout the case. This is that new theory where he, on summary judgment, repudiated a court tenant of his complaint and changed the entire theory of the case in order to avoid the holding that there was pre-registration infringement in December and January 2010. We did contest that. I mean, again, right in the complaint and throughout the action until summary judgment, it was always – I mean, he says in his complaint – this is on the second volume of the joint appendix at page 184. That's the third amended complaint in the 1304 case in paragraphs 34 and 35. It's alleged, quote, defendants immediately lost any right, license, or permission to use any of plaintiff's intellectual property, end quote. And that was referring to December 10, 2010. And we cited this numerous times in our briefing on summary judgment, so I just wanted to make the point that we certainly did contest that, and we do contest it. Arguing now that the license was revoked in April 2011 is a new argument raised for the first time on summary judgment. And, you know, that's extremely prejudicial to us and really a waste of judicial resources if we have to go back and now defend. You know, we defended the case on the theories that were put forth and the allegations in the complaint. So to change them now is just not fair. So anyway, the point about the contract is there's no – the theory that he talks about is really irrelevant because there was never any contract. He even testified, Mr. Fisher, at his deposition, and this was at the first volume of the joint appendix of page 179, that he didn't have any contract with any of the three individual defendants. And although he didn't testify that he didn't have a contract with the corporate defendant, he didn't, and the evidence shows that. I don't – you know, I don't know if I need to go into the other areas. Unless the Court has any questions for me, I'd be happy to answer them. Thank you. Thank you. We'll hear the rebuttal. Your Honors, the opposing counsel mentioned this idea that no consumer would understand that to be CMI, but that misses the very point of the statute. Most consumers don't know much of anything about copyright, so it would eviscerate the statute if you read into it a consumer standard. The way that the statute protects consumers is through a knowledge requirement. They know that they're removing CMI. In addition, it requires a standard of mens rea with respect to the underlying copyright infringement itself and requires there be a nexus. So it objectively is, as a matter of law, his name. Fisher's Be Quick, was that being used as CMI for the four phrases? Yes, Your Honor. Now, I mean, so a consumer looking at that would say these four phrases are copyrighted by Fisher? It doesn't have to be a consumer looking at it. It has to be object – Anyone looking at it. Anyone looking at it, yes. If they're looking at it for the purpose of copyright, it would help them to trace the origin. So, for example, the magistrate mentioned the issue of a Kellogg's serial example, and Kellogg's is, in fact, the author and the owner of the copyrighted material. So if you want to know who owns the copyrighted materials and the advertising, you would go to the Copyright Office and you would see that Kellogg's owns it. If you take that name out of the advertising materials, it's going to be much harder to trace the copyright. In fact, extraordinarily difficult. So it links it back. The problem here with the standard that the district court applied is confusing that you don't have to look at it. In the same way, if you watch a movie, you're not thinking about copyright. But if you are thinking about copyright, it will help you to trace the origin of the work, to understand, oh, this is the person that I have to go speak to. If you aren't watching it for that purpose, then there would be no need to think about copyright or CMI at all. So the flaw in that point is this idea that it has to be readily apparent to you, rather than information identifying information, and this is identifying information. And the way that's a very broad definition, and that's intentionally so by Congress, to set norms so that individual consumers aren't subject to strict liability claims for copyright infringement. So you import mens rea requirements for the CMI claim, and in turn, that helps to protect consumers downstream. And in this case, you see a prime example. The defendant stripped the CMI and they sent it out to third-party websites. Those third-party websites put it up. They are now liable for copyright infringement if Mr. Fisher sued them. But if they had retained Mr. Fisher's name, they would not be if they'd asked and said, why is advertising a different product? Thank you. We'll reserve decision.